UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK OLIVER | CIVIL ACTION |
| VERSUS | NO: 10-796 |
| WEEKS MARINE, INC. | SECTION: "S" (2) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On November 12, 2009, plaintiff, Patrick Oliver, fell while descending a removable bunk bed ladder aboard the M/V CAPTAIN FRANK, a vessel owned and operated by defendant, Weeks Marine, Inc. Although Weeks Marine owned and operated the vessel, Oliver was employed by Atlantic Sounding Co., Inc., a wholly owned subsidiary of Weeks Marine. On March 4, 2010, Oliver filed this suit in United States District Court for the Eastern District of Louisiana against Weeks Marine alleging claims under the general maritime law of negligence and unseaworthiness.[1] Oliver claims that the removable bunk bed ladder was unsafe and rendered the vessel unseaworthy, and that Weeks was negligent in failing to provide him with safe sleeping quarters. This matter was tried by the court without a jury on January 19 and 20, 2012.

---

[1] On January 5, 2010, Atlantic filed a declaratory judgment action in the United States District Court for the Southern District of Mississippi, seeking a declaration that Oliver is not entitled to maintenance and cure. See Atlantic Sounding Co., Inc. v. Oliver, USDC SDMS, C.A. No. 10-3. That court entered a default judgment and a declaratory judgment in favor of Atlantic, holding that Oliver is not entitled to maintenance and cure for the November 12, 2009, accident, because Oliver stipulated that he would not pursue a claim for maintenance and cure against Atlantic Sounding.

A.      **Oliver's Accident**

Oliver began working aboard the M/V CAPTAIN FRANK as an oiler on August 29, 2009, while the vessel was involved in a dredging project for the Untied States Army Corps of Engineers. He worked 14 day hitches, alternating weeks in which he would work the day shift and the night shift. While aboard the vessel, Oliver slept on the top bunk of a metal-frame portable bunk bed that had a removable metal ladder. The ladder hooked onto the top bunk underneath the mattress. One of the hooks was shorter than the other, but the shorter hook was long enough to hold the ladder to the bed frame. Although Oliver was not trained in how to use this ladder, he testified that he knew how.

On November 12, 2009, Oliver fell while descending from his top bunk. Oliver testified that the ladder was in place when he went to bed. He assumed that the galley hands put it in place while performing their duties of making the beds. He had not had any trouble using the ladder to ascend to the upper bunk prior to the accident. Oliver testified that, as he put his right foot on the ladder to descend from the bunk, the ladder came off the bed and he fell. He said that his hands were on the bed and he tried to grab the bedding to stop his fall. Oliver and the ladder fell to the floor, and Oliver injured his back. Oliver testified that there was no warning that the ladder was going to come off of the bed, and that he has no idea what happened to the ladder. He denies checking to ensure that it was properly attached to the bed before beginning his descent. He testified that he was on the M/V CAPTAIN FRANK for 53 days prior to the accident, and had used the ladder twice per day without any problems.

There were no witnesses to the accident, but George Williamson, the chief engineer, and Adam Jones, the watch engineer who is Oliver's direct supervisor, arrived in Oliver's quarters shortly after the accident. Williamson testified that he would not have used the ladder because of his age and history of back injuries and surgery. Jones testified that he has worked on the M/V CAPTAIN FRANK for six to seven years, and that all of the vessel's aft quarters have the type of ladder at issue. Jones testified that he has used this type of ladder before and it has not shifted, tilted, rocked, or shaken. He also testified that he had never before heard of an accident involving such a ladder.

Geoffry Webster, called as an expert by Oliver, is a marine engineer, naval architect, and dredge consultant whose experience with dredges dates back to 1969. He testified that has built vessels or taken an existing vessel and added accommodations and equipment around 10 or 12 times, and that he always installed "standard marine bunkbeds with built in ladders and lee rails to protect people from falling out when they're at sea." Although he did not inspect the vessel, he viewed photographs of the ladder at issue to formulate his opinions. He opined that the bunk bed was not suitable for the marine application because it was not built into the structure of the boat, did not have lee rails for one to grab onto, and did not have a proper ladder for accessing the top bunk. He did not think the ladder was suitable because it was not permanently affixed and did not reach the floor. He opined that the ladder could slide while in use, be tipped, be dislodged by the vibrations caused by the dredging work, or get stuck in the bedding. He testified that the ladder could have been safer if it were bolted to the bed and extended to the floor, and that Weeks Marine should have marine

bunk beds with lee rails and permanently affixed ladders that are installed into the structure of the vessel.

David Scruton was called by defendant as an expert in marine operations and safety. He has been a marine consultant for 20 years and regularly works on vessels similar to the M/V CAPTAIN FRANK. Scruton testified that he inspected the ladder at issue. He opined that the bunk bed and ladder were fit for their intended use, and that nothing about the bunk bed or ladder played a substantial part in bringing about or actually causing Oliver's accident. He testified that this type of ladder "is a normal ladder that you see on quite a few inland type vessels," and that "ladders like the one in question are in wide use, not only on dredges and rigs, platforms, offshore support vessels, cruise liners, and freighters." Scruton found that the ladder was well constructed, and that it did not matter that one of the hooks was shorter than the other because even the shorter hook hooks well onto the bunk bed and the ladder braces firmly against the bedframe when someone's weight is on it. He opined that it was "highly unlikely that the ladder would come off the bunk under normal dredge operations." Scruton testified that the type of bunk bed used by Oliver and bunk beds that are part of the vessel structure are both common in the industry, and that there is nothing inherently unsafe about the type of bunk bed and ladder at issue. Scruton stated that Oliver used the ladder for more than 50 days and that he could have brought it to someone's attention if he thought it were unsafe.

Weeks Marine's safety handbook stated that ladders must be placed on secure, non-slippery surfaces and be positioned to keep the bottoms from slipping while in use. It also stated that workers should face the ladder, maintain three-point contact, and never use the top rung as a step.

The United States Army Corps of Engineers Manual states that ladders shall be used only for their intended use, and that portable ladders must be sufficient length and be placed so that the worker does not have to stretch or assume a dangerous position, must extend three feet above the landing surface or the worker must have a grasping device, and must have slip-resistant feet.  Also, ladders must be secured by top, bottom, and intermediate fastenings as necessary to hold them rigidly in place and support the loads.

### B.     General Maritime Negligence and Unseaworthiness

Oliver asserts claims against Weeks Marine under general maritime law of negligence and unseaworthiness.  "The analysis of a maritime tort is guided by general principles of negligence law." In re Signal Intern., LLC, 579 F.3d 478, 491 (5th Cir. 2009) (internal quotation and citation omitted).  In order for liability to be established, there must be a duty owed, a breach of the duty, an injury, and a causal connection between the defendant's conduct and the plaintiff's injury. Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000).  Determining whether a duty is owed is a question of law. In re Great Lakes Dredge & Dock Co., LLC, 624 F.3d 201, 211  5th Cir. 2010) (quoting In re Signal Intern, 579 F.3d at 490).  Under maritime law, the alleged tortfeasor owes the plaintiff a duty of ordinary care under the circumstances. Id. (citing Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980)).  "The determination of the existence and scope of a duty 'involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party.'" Id. (quoting Consol. Aluminum Corp. v. C.F. Bean Corp., 833 F.2d 65, 67 (5th Cir. 1987)).  Further, to be liable for negligence under the general maritime law,

a vessel owner must have actual or constructive knowledge of the risk-creating condition. Monteleone v. Bahama Cruise Line, Inc., 838 F.2d 63, 65 (2nd Cir. 1988).

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence." Usner v. Luckenback Overseas Corp., 91 S.Ct. 514, 517(1971). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be 'accident free.'" Simeon v. T. Smith & Son, Inc., 852 F.2d 1432, 1432-33 (5th Cir. 1988). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir.1992). Further, the "standard for establishing causation for an unseaworthiness claim is demanding" because "it requires showing (1) that the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Manderson v. Chet Morrison Contractors, Inc., 666 F.3d 373, 380 (5th Cir. 2012) (quoting Smith v. Trans-World Drilling Co., 772 F.2d 157, 162 (5th Cir. 1985)).

Oliver has not carried his burden of proving that Weeks Marine is liable to him under the general maritime law of negligence or unseaworthiness. He has not established that, with respect to the bunk bed ladder, Weeks Marine breached its duty of ordinary care under the circumstances or provided a vessel and equipment that was not reasonably fit for its intended use. Webster's testimony established that there was another type of bunk bed and ladder available that Weeks Marine could have used, that the ladder in question could have been safer, and that the ladder did not comply with the provisions applicable to ladders in the Weeks Marine safety handbook or the

United States Army Corps Engineers Manual. However, Oliver has not presented any evidence that Weeks Marine knew or had reason to know that the ladder was not reasonably fit for its intended use. Oliver admitted that he used the ladder 107 times prior to the accident without any issues. Also, he admitted that he did not check to ensure the ladder was properly affixed before using it and that he cannot explain what happened. Jones has used the same type of ladder numerous times without any incident and had never before heard of an accident on the ladders. Scruton testified that the type of ladder in question is common in the maritime industry and that there was nothing defective about the particular ladder involved in the accident. Further, the provisions in the Weeks Marine safety handbook and the United States Army Corps of Engineers Manual pertaining to ladders are not specifically applicable to bunk bed ladders. Rather, those provisions clearly apply to portable ladders used for working, not bunk bed ladders. Indeed, there is nothing in either manual that is specific to bunk beds or their ladders. Therefore, Oliver has not established either negligence or unseaworthiness under the general maritime law. Weeks Marine is entitled to judgment in its favor, and Oliver's claims against it are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  4th  day of April, 2012.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**